UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES A. MARRANCA,

                              Petitioner,

        v.                                              **DECISION AND ORDER**
                                                        07-CV-859S

UNITED STATES INTERNAL REVENUE
SERVICE, DEBRA K. HURST, HENRY M.
PAULSON, *Secretary of the Treasury of the
United States*, LINDA F. STIFF, *Acting
Commissioner of Internal Revenue*, and
PRECISION PROCESS EQUIPMENT, INC.,

                              Respondents.


# I.  INTRODUCTION

        In this action, pro se Petitioner James A. Marranca seeks to quash a Notice of Levy

served on his employer based on various "tax protester" theories challenging the Internal

Revenue Service's ("IRS") authority to collect federal income taxes.[1]  (Docket No. 6.)

Presently before this Court is the government's Motion to Dismiss the Amended Petition,

as well as Petitioner's various motions seeking default judgment against his employer.  For

the reasons that follow, the government's motion is granted and Petitioner's motions are

denied.

---

        [1] Petitioner's pro se status entitles his submissions to broad consideration.  Because of the distinct
disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and
interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519,
520, 92 S. Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  This
Court has considered Petitioner's submissions accordingly.

## II.  BACKGROUND

**A.      Procedural History and Pending Motions**

On December 28, 2007, Petitioner filed a Petition against the Commissioner of the IRS, Debra K. Hurst (an IRS employee), and his employer, Precision Process Equipment, Inc. ("Precision"), requesting that an IRS Notice of Levy served on Precision be quashed, and that a temporary restraining order be issued to restrain Precision from garnishing his wages in compliance with the Notice of Levy.  (Docket No. 1).

This Court denied Petitioner's request for a temporary restraining order on January 4, 2008, finding that the Anti-Injunction Act, 26 U.S.C. § 7421, barred such relief.  (Docket No. 2.)  Petitioner moved for reconsideration on January 28, 2008 (Docket No. 4), which this Court denied on January 31, 2008 (Docket No. 5).

Thereafter, on February 15, 2008, Petitioner filed an Amended Petition, adding Henry M. Paulson, Secretary of the Treasury of the United States, and Linda E. Stiff, Acting Commissioner of Internal Revenue, as respondents.[2]  (Docket No. 6.)  This rendered the initial Petition moot.

The motions to date have centered around two issues: (1) the government's efforts to secure dismissal of the Amended Petition, and (2) Petitioner's efforts to secure default judgment against Precision.  The motions have been sufficiently briefed and are ripe for consideration.  Oral argument is unnecessary.

On March 7, 2008, the government filed a Motion to Dismiss the Amended Petition. (Docket Nos. 9, 10, 12, 20.)  Petitioner filed two responses in opposition (Docket Nos. 17,

---

[2]This Court will refer to Respondents IRS, Paulson, Stiff, and Hurst, collectively, as "the government."

22), as well as a Motion to Dismiss the government's Motion to Dismiss (Docket No. 23). The government filed a response in opposition to Petitioner's Motion to Dismiss on June 5, 2008. (Docket No. 24.) Approximately one month later, Petitioner filed a Petition for Writ Quo Warranto, seeking an Order compelling the government to, *inter alia*, demonstrate its constitutional authority to lay and collect taxes. (Docket No. 29.)

Meanwhile, on April 3, 2008, the Clerk of the Court entered default against Precision because it failed to appear and defend this action. (Docket No. 15.) Petitioner moved for default judgment on April 17, 2008. (Docket No. 16.) Though not appearing for Precision, the government filed a response in opposition to Petitioner's Motion for Default Judgment on April 22, 2008. (Docket No. 18.) Petitioner responded with a "Clerk's Praecipe Re: Default Judgment by Clerk and Order" (Docket No. 19) and later a "Judicial Notice of Trespass, and Motion for Sanctions" (Docket No. 27), which both request that the government's submission be stricken and that sanctions be imposed. The government opposed each of Petitioner's submissions. (Docket Nos. 21, 28.)

Finally, Petitioner filed two Motions for Writ of Mandamus (Docket Nos. 25, 30, 31) in June and October 2008, seeking an Order compelling the Clerk of the Court to grant his Motion for Default Judgment against Precision. The government opposed each motion. (Docket Nos. 26, 32.)

**B. Facts**

The facts of this case — which are alleged in the Petition but not re-alleged in the

Amended Petition — are simple.[3] On December 3, 2007, the IRS sent Precision a Form 668-W(c) Notice of Levy on Wages, Salary, and Other Income, to begin garnishing Petitioner's wages to collect back taxes. (Petition, Docket No. 1, pp. 4-5, ¶¶ 8-10.) This form, which is attached to the Petition as Exhibit B, reflects that Petitioner's total unpaid assessment from tax years 1995, 2001, 2002, and 2003, was $22,303.23 as of December 26, 2007. (Petition, p. 5, ¶¶ 12-13 and Exhibit B.)

Petitioner alleges that the IRS never assessed him for tax years 1995, 2001, 2002, and 2003. (Petition, p. 9, ¶ 32; p. 11, ¶ 41.) In support of this allegation, Petitioner attaches a July 2004 letter response he received to a Freedom of Information Act request, wherein the IRS stated that "[w]e have no record of tax assessments for the tax years 1996, 2002 and 2003 at the present time, therefore, there is no responsive Record of Assessment for those years." (Petition, p. 9, ¶ 32 and Exhibit D.) Petitioner therefore maintains that no tax has been assessed. (Petition, p. 10, ¶ 36.) The government advises, however, that the assessments for 2002 and 2003 were made after the July 2004 letter was issued. (Murphy Decl., Docket No. 12, ¶ 5.)

In his Amended Petition, Petitioner sets forth a litany of reasons for why he believes the Notice of Levy should be quashed, mainly centered around his belief that the IRS is without authority to collect income taxes. Based on these reasons, he asks that this Court

---

[3]Given his pro se status, this Court will consider the allegations in the Petition, despite the fact that Petitioner subsequently filed an Amended Petition. For purposes of his factual allegations, this Court assumes that Petitioner operated under the mistaken assumption that his Amended Petition would supplement, rather than replace, his Petition, as evidenced by his failure to include a factual recitation in his Amended Petition, and by his statement that he "seek[s] to perfect [his] original petition" (Amended Petition, p. 2). Cf. Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") It is clear from the Amended Petition, however, that it is intended to be the operative document for Petitioner's legal challenge, as evidenced by Petitioner's statement that he seeks to "narrow[] the issues to the subjects of lawful garnishments and real parties in interest." (Amended Petition, p. 2.)

(1) quash the Notice of Levy, declare it an "uttered instrument" of no legal force, and order Precision to disregard it, (2) issue an arrest warrant for Respondent Hurst for the "crime of uttering," (3) order the return of his allegedly illegally seized property (presumably his garnished wages) with interest, and (4) "order that all federal respondents be brought before a court, sitting in common law jurisdiction, and made to bring forth the contract and or lien which would show proof of the duty, obligation and liability of James A. Marranca." (Amended Petition, p. 17.)

### III. DISCUSSION

**A.      The United States Is the Proper Federal Respondent**

"The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (quoting Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947) and Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949)).

"Suits against federal employees acting in their official capacity and suits against federal agencies must be analyzed as suits against the United States." See Petitio v. Hill, No. CV-04-4493, 2007 WL 1016890, at *10 (E.D.N.Y. Mar. 27, 2007) (citing Celauro v. United States, 411 F.Supp.2d 257, 267-68 (E.D.N.Y. 2006)); see also Higgins v. United States, No. 02 CV 499, 2003 WL 21693717, at *1 (E.D.N.Y. May 27, 2003) (dismissing IRS on ground that Congress has not authorized suit against the IRS in its own name).

Petitioner argues that his claims should be considered under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, in which the United States Supreme Court held that federal officials may be held personally liable for damages for the violation of an individual's constitutional rights. 403 U.S. 388, 396-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). But a Bivens action is unavailable when adequate remedial mechanisms exist for the alleged constitutional violations, such as the process afforded by the Internal Revenue Code. See Schweiker v. Chilicky, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Thus, a Bivens action is not available against IRS officials to challenge tax collection and assessment. See Hudson Valley Black Press v. I.R.S., 409 F.3d 106, 113 (2d Cir. 2005) (noting that "[b]ecause of the complex remedial scheme that Congress has created, and the plain indication that the failure of Congress to provide a remedy for injuries arising from tax assessment was not inadvertent, every circuit that has considered the appropriateness of a *Bivens* remedy in the taxation context has declined to permit one"); McMillen v. United States Dep't of Treasury, 960 F.2d 187, 190-91 (1st Cir. 1991) (per curiam); Celauro, 411 F.Supp.2d at 267. Petitioner has therefore failed to state a Bivens claim. See Celauro, 411 F.Supp.2d at 267; Jackman v. D'Agostino, 669 F.Supp. 43, 46-47 (D.Conn. 1987); Flank v. Sellers, 661 F.Supp. 952, 954-55 (S.D.N.Y. 1987)

Here, Petitioner's allegations involve actions taken by the individual respondents in their official capacities. This is therefore a suit against the United States. Accordingly, the IRS, Henry Paulson, Linda Stiff, and Debra Hurst, will be dismissed as respondents in favor of the United States.

The United States, as sovereign, however, may only be sued to the extent that it consents to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85

6

L.Ed. 1058 (1941).  Only Congress can waive this sovereign immunity defense, and it must do so expressly.  United States v. Nordic Village, 503 U.S. 30, 33-34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).  In this context, the United States has not expressly consented to be sued, and in fact, Congress has expressly asserted its sovereign immunity through the Anti-Injunction Act.  See Celauro, 411 F.Supp.2d at 269 ("the Anti-Injunction Act represents an express assertion of sovereign immunity by the United States in suits seeking to restrain the assessment or collection of any tax").  Accordingly, this Court lacks subject matter jurisdiction and Petitioner fails to state a claim against the United States.  Id. at 270.

**B.      Dismissal of the Amended Petition Is Warranted**

**1.      The Government's Motion to Dismiss the Amended Petition**

**a.      This Court Lacks Subject Matter Jurisdiction**

The government does not move for dismissal based on lack of subject matter jurisdiction under Rule 12(b)(1).  Rather, it argues that Petitioner has not included "a short and plain statement of the grounds for the court's jurisdiction," as required by Rule 8(a)(1).

The Petition and Amended Petition both contain sections captioned "Jurisdiction and Venue."  In the Petition, jurisdiction is premised on 28 U.S.C. §§ 1331 (federal question) and 1340 (Internal revenue; customs duties).  (Petition, ¶ 2.)  In the Amended Petition, jurisdiction is premised on "the admiralty jurisdiction, and admiralty rules apply." (Amended Petition, pp. 1-2.)  Although admiralty jurisdiction is not relevant here, Petitioner initially identified colorable jurisdictional grounds.  Consequently, given his pro se status, this Court finds that Petitioner has met the minimal pleading requirement of Rule 8(a)(1).  This, however, does not end the jurisdictional inquiry.

A federal court "may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceedings." Adams v. Suozzi, 433 F.3d 220, 224 (2d Cir. 2005) (quoting F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 100 n.2 (2d Cir. 1999)). The action must be dismissed if subject matter jurisdiction is lacking. See Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000). Such is the case here.

As noted above and in this Court's decision denying Petitioner's request for a temporary restraining order, the Anti-Injunction Act, 26 U.S.C. § 7421, prohibits courts from hearing suits brought "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a); see also Ulloa v. United States, No. 1:06-CV-751, 2006 WL 1763676, at *1 (N.D.N.Y. June 22, 2006). This is precisely the nature of relief requested in Petitioner's first, second, and fourth claims for relief, which are as follows:

> (1) declare that the Form 668-W(c) [Notice of Levy] in this matter is an uttered instrument, having no legal validity or force, and quash the uttered instrument that has been mailed to Respondent PRECISION, and immediately order Respondent PRECISION to disregard the uttered instrument unless and until a proper writ of garnishment is issued by a court having jurisdiction over the person and property of petitioner, and
>
> . . .
>
> (3) order the return [sic] all Petitioner's property, with interest, which has been illegally seized due to the issuance of an uttered instrument; and
>
> (4) order that all federal respondents be brought before a court, sitting in common law jurisdiction, and made to bring forth the contract and or lien which would show proof of the duty, obligation and liability of James A. Marranca.

(Amended Petition, p. 17.)

The United States Supreme Court has recognized that "the object of § 7421(a) is

to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."[4] <u>Enochs v. Williams Packing & Nav. Co.</u>, 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962); <u>see</u> <u>also</u> <u>Falik v. United States</u>, 343 F.2d 38, 40-43 (2d Cir. 1965).  Rather, assessments must generally be contested in the United States Tax Court, or in a refund action in federal district court or the Court of Claims after payment of the assessment.  <u>See</u> <u>Follum v. United States</u>, No. 98-CV-126A, 1998 WL 419720, at *1 (W.D.N.Y. Apr. 29, 1998) (citing <u>Williams Packing</u> and <u>Falik</u>).

Accordingly, because Petitioner seeks to restrain the assessment and collection of taxes in this first, third, and fourth claims for relief, this Court lacks subject matter jurisdiction under the Anti-Injunction Act.  Dismissal of those claims is therefore required.

Moreover, Petitioner's second claim for relief is dependent on the success of his other three claims, over which this Court lacks subject matter jurisdiction.  In his second claim for relief, Petitioner, citing 18 U.S.C. § 472, requests that this Court "issue [sic] immediate warrant of arrest for respondent DEBRA K. HURST for the crime of uttering." (Amended Petition, p. 17.)  Section 472 of Title 18 of the United States Code is a criminal statute that must be enforced by the United States Attorney's Office.  Consequently, in addition to this Court lacking subject matter jurisdiction over the underlying claims, Petitioner lacks standing to bring his second claim for relief and it must therefore be

---

[4]An exception to this prohibition applies when the plaintiff (or petitioner) can show that (1) the government cannot ultimately prevail under any circumstances, and (2) equity jurisdiction otherwise exists because the taxpayer would suffer irreparable injury if collection were effected.  <u>See</u> <u>Bob Jones Univ. v. Simon</u>, 416 U.S. 725, 745-47, 94 S.Ct. 2038, 2050-52, 40 L.Ed.2d 496  (1974); <u>Williams Packing</u>, 370 U.S. at 7; <u>Gavigan v. Comm'r, Internal Revenue Serv.</u>, No. 3:06-CV-942, 2007 WL 1238651, at *9 (D.Conn. Apr. 27, 2007).  Petitioner has not made either showing.

dismissed.

Accordingly, the Amended Petition must be dismissed in its entirety because this Court lacks subject matter jurisdiction. There is, however, the possibility that this Court would have federal question jurisdiction under 28 U.S.C. § 1331 if Petitioner's Amended Complaint is read, under the most liberal of constructions, to challenge the constitutionality of the Internal Revenue Code as a whole, independent of the request for injunctive relief. Because of this possibility, and to give Petitioner a full review of his case, this Court continues to analyze the sufficiency of the claims presented. See Cameron v. I.R.S., 593 F.Supp. 1540, 1548 (D.C.Ind. 1984).

### b. Petitioner Fails to State Any Claims

The government alternatively moves for dismissal of the Amended Complaint under Rule 12(b)(6). That rule provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12 (b)(6). When determining whether a complaint states a claim, the court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

Although the complaint need not include detailed factual allegations, the plaintiff must show the "grounds of his entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.; Goldstein, 516 F.3d at 56. But even assuming the truth of sufficient factual allegations, dismissal is nonetheless warranted if the claim fails as a matter of law or is not a judicially

cognizable right of action.  See Wojchowski v. Daines, 498 F.3d 99, 106 (2d Cir. 2007); York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002).

Petitioner has not set forth any cognizable causes of action in his Petition.  The overriding claim appears to be that the Notice of Levy should be quashed because the collection of taxes by the IRS is unconstitutional for the eight reasons articulated in the Petition.  Whether treated as eight separate claims or a single claim with eight theories, the government asserts that Petitioner has failed to state a claim upon which relief can be granted because none of the theories have merit.  This Court agrees.

Petitioner first claims that the United States Constitution prohibits the IRS from collecting taxes because the Secretary of the Treasury is unauthorized to do so and "[c]ollecting taxes is a legislative function, not an executive function."  (Amended Petition, pp. 5-7.)  Although it is true that the Constitution empowers the Congress to "lay and collect taxes," U.S. CONST. Art. I, § 8, cl. 1, Petitioner's argument is without merit.

Congress may delegate to the Executive branch the authority to implement and enforce the laws it establishes, including those related to the collection of taxes.  See Ulrich v. United States, No. 03-CV-625, 2003 WL 22753539, at *2 (N.D.N.Y. Sept. 26, 2003) ("[T]he delegation of the administration of the collection of taxes to the Internal Revenue Service is not an unconstitutional violation of the separation of powers.  The IRS is simply enforcing the laws established by Congress . . . .").  Moreover, Congress has specifically authorized the Secretary of the Treasury to administer and enforce the tax laws.  See 26 U.S.C. § 7801.

Petitioner's next claim is premised on his first one.  He states that because the Executive branch is prohibited from collecting taxes, "the Secretary" referred to in 26

U.S.C. § 6301 cannot be the Secretary of the Treasury, and therefore Respondents Paulson, Stiff, and Hurst, are without authority to issue a Notice of Levy. Cf. 26 U.S.C. § 6301 ("The Secretary shall collect the taxes imposed by the internal revenue laws.").

As noted above, the premise of this argument is faulty: the collection of taxes by the IRS does not pose a separation of powers issue. Moreover, the tax code clearly defines "Secretary" as "the Secretary of the Treasury or his delegate." 26 U.S.C. § 7701(a)(11)(B). And "delegate" is defined, when used in reference to the Secretary of the Treasury, as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." 26 U.S.C. § 7701(12)(A)(I). Thus, there is no merit to Petitioner's argument that Respondents lack proper authority to enforce the tax laws and issue Notices of Levy.

Petitioner's third claim is also grounded in the false notion that the collection of taxes by the Executive branch is unconstitutional. Petitioner claims that the government is "exercising powers not granted by the Constitution, by collecting taxes from within the executive branch, thereby violating Articles I and II and the 9th and 10th Amendments." (Amended Petition, pp. 8-9.) For the reasons stated above, this claim fails as a matter of law.

Petitioner's fourth claim is that the Notice of Levy issued by the IRS is an "uttered instrument"[5] because a Notice of Levy is not, itself, a levy, and therefore no garnishment can be attached pursuant to a Notice of Levy. (Amended Petition, p. 9 ("A notice of

---

[5]"Uttered instrument" refers to the crime of uttering, which is to present a false or worthless instrument with the intent to harm or defraud. See BLACK'S LAW DICTIONARY 1545 (7th ed. 1999).

12

something is never the thing of which it notifies.").)  Under federal regulations, however, "[l]evy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights of property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation."  26 C.F.R. § 301.6331-1(a)(1); <u>see</u> <u>also</u> 26 U.S.C. § 6331(b) (defining "levy" as "the power of distraint and seizure by *any* means" (emphasis added)).  Moreover, when faced with a similar argument that a Notice of Levy is ineffectual because it is not a "levy," the Second Circuit characterized it as "absolutely meritless" for principally the reasons set forth above, and noted that "[w]ithout exception the case law supports the use of a notice of levy."  <u>Schiff v. Simon & Schuster, Inc.</u>, 780 F.2d 210, 212 (2d Cir. 1985) (collecting cases).

Petitioner's fifth claim is that the Notice of Levy is defective because it seeks to collect a "1040 tax," which does not exist.[6]  (Amended Petition, pp. 9-10.)  According to Petitioner, 1040 is a form, not a tax.  This argument is disingenuous, at best.  It is clear that "1040," which is the well known number of the form used by most individuals filing federal income tax returns, is employed simply as a shorthand to describe the type of tax that is due and owing.  Petitioner's suggestion that the Notice of Levy is an uttered instrument because it references "a type of tax that does not exist" is wholly without merit.  (Amended Petition, p. 10.)

Petitioner's sixth claim is comprised of multiple arguments.  Petitioner first argues that only income earned outside of the United States must be reported to the government

---

[6]Under a column on the Notice of Levy labeled "Kind of Tax," the shorthand "1040" and "1040A" is used.  (Petition, Exhibit B.)

13

for tax purposes. (Amended Petition, pp. 10-14.) This, according to Petitioner, is because citizens have a right to domestic income and Form 1040 contains an explicit instruction to include income from sources outside of the United States, but does not contain a like instruction for "domestic income." Id. Somehow, Petitioner extrapolates this strained reasoning into the conclusion that only aliens must report their domestic income:

> "Whereas it is a privilege for an alien to make a living in America, it is a right for an American citizen. Thus, the 'income tax' that applies to aliens, and to citizens deriving income from foreign sources, does not apply to me, for whom earning a living from 'domestic sources' is a right, not a privilege issued to me by the federal government."

(Amended Petitioner, p. 11.)

Petitioner's argument is unpersuasive. For tax purposes, the statutory definition of "gross income" is "all income from whatever source derived," and there is no differentiation between foreign and domestic sources. 26 U.S.C. § 61. Thus, all income, whether foreign or domestic, must be reported. Cf. Great-West Assur. Co. v. United States, 678 F.2d 180, 183-184 (Ct. Cl. 1982) (source of income is immaterial because citizens of the United States are subject to tax on their worldwide income).

Petitioner's next contention is that he is not subject to taxation by the federal government because he is not a citizen of the United States, but rather, a citizen of the "Union state" in which he was born. He therefore claims that he has no obligation to pay federal taxes, and thus, any form claiming that he does is an uttering. (Amended Petition, p. 12.) This is a frivolous argument that has been routinely rejected. See, e.g., Upton v. I.R.S., 104 F.3d 543, 545 n.1 (2d Cir. 1997) (per curiam) (noting that the plaintiff's "tax protester arguments," which included the non-citizen argument, "are barely worth a

footnote"); United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993) (characterizing this non-citizen argument as "shop worn" and rejecting it); United States v. Sileven, 985 F.2d 962, 970 (8th Cir. 1993) (per curiam) (characterizing this type of argument as "plainly frivolous" and rejecting it); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (resolving the non-citizen and other "tax protester" arguments by holding that "[t]hese issues are completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion").

The final component of Petitioner's sixth claim is that Form 1040 is invalid because it lacks a control number as required by the Paperwork Reduction Act ("PRA") of 1980, 44 U.S.C. § 3501, et seq. This argument has also been rejected.

The PRA provides that no person can be penalized for failing to maintain or provide information to any agency if the paperwork requesting the information does not contain a current control number assigned by the Office of Management and Budget Director. See 44 U.S.C. § 3512. The purpose of the PRA is to reduce the burden of information requests on the public. See Dole v. United Steelworkers of Am., 494 U.S. 26, 32-33, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). It is not, however, intended to abrogate other duties imposed by Congress, such as filing tax returns. See United States v. Neff, 954 F.2d 698, 699 (11th Cir. 1992) (per curiam) ("Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress."); James v. United States, 970 F.2d 750, 753, n. 6 (10th Cir. 1992) ("lack of an OMB number on IRS notices and forms does not violate that statute"); United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir. 1991) ("Congress enacted the PRA to keep agencies, including the IRS, from deluging the public with needless paperwork. It did not do so to create a loophole in the tax code.").

15

Petitioner's argument is therefore unavailing.

Petitioner's seventh claim is that the United States Tax Court lacks jurisdiction over him because its jurisdiction is limited to the District of Columbia, because that is where it is physically located. (Amended Petition, p. 14.) Petitioner therefore maintains that "Tax court lacks jurisdiction over my income, unless the source of that income is the District of Columbia." Id. Although the relevancy of this argument is not apparent, it nonetheless lacks merit. The Tax Court may exercise jurisdiction over, and enter a judgment in, a civil action for determination of tax liability. See 26 U.S.C. §§ 6214, 7429(b)(2)(B). And although Petitioner correctly notes that its principal office is in the District of Columbia, "the Tax Court or any of its divisions may sit at any place within the United States." 26 U.S.C. § 7445. Thus, Petitioner's argument fails.

In his eighth claim, Petitioner mistakenly cites to the Federal Debt Collection Procedure Act and contends that the Notice of Levy cannot form the basis for garnishment because the government has not obtained a lien. (Amended Petition, pp. 14-15.) By operation of law, however, the government validly obtained a lien when it assessed Petitioner for the amount of taxes he failed to pay. See 26 U.S.C. §§ 6321 (providing that amount of tax owed becomes lien upon failure to pay), 6322 (lien arises at time assessment is made). Petitioner's argument therefore fails.

In his ninth claim,[7] Petitioner appears to argue that the IRS lacks authority to collect taxes by levy, and that only a court can compel an employer to garnish wages. (Amended Petition, p. 16.) This is clearly not the case. The IRS possesses the authority to "levy upon

---

[7]The Amended Petition contains two sections labeled "Argument 8." This argument is sequentially Petitioner's ninth.

all property and right to property" belonging to any person liable to pay taxes, without judicial intervention. See 26 U.S.C. § 6331(a); United States v. Rodgers, 461 U.S. 677, 682, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (IRS administrative levy "does not require any judicial intervention"). The IRS can therefore compel employers to garnish wages. An employers failure to comply with the levy subjects it to its own liability. See 26 U.S.C. § 6332(d)(1) and (2). Thus, Petitioner's final claim fails.

Finally, for the sake of completeness, this Court addresses Petitioner's claim that the warrantless garnishment of his wages pursuant to the Notice of Levy violates his Fourth Amendment right to be free from unreasonable search and seizure. This claim was raised in the Petition and again in Petitioner's opposition to the government's motion.

Congress has provided the IRS with authority to issue Notices of Levy without a warrant. See 26 U.S.C. § 6331; Nelson v. Silverman, 888 F.Supp. 1041, 1046 (S.D.Cal 1995) ("Fourth Amendment case law states that a warrant is not required for the seizure of property in satisfaction of a tax claim by the Internal Revenue Service.") (citing GM Leasing Corp. v. United States, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977)). The constitutionality of this levy procedure has "long been settled." U.S. v. Nat'l Bank of Commerce, 472 U.S. 713, 721, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985) (quoting Phillips v. Comm'r., 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)).

Fourth Amendment protections apply in the IRS tax collection context only when the property sought by levy is unobtainable without an intrusion of privacy. See GM Leasing Corp., 429 U.S. at 351-52; Maisano v. Welcher, 940 F.2d 499, 502-03 (9th Cir. 1991) ("In applying the Fourth Amendment to IRS seizures of taxpayers' property, the Supreme Court indicates that the key issue is whether the seizure involves an invasion of privacy.") Since

the Notice of Levy in this case was served on Petitioner's employer, Petitioner had no reasonable expectation of privacy and the Fourth Amendment warrant requirement is therefore not implicated. See Cameron, 593 F.Supp. at 1554 (holding that no invasion of privacy occurred for Fourth Amendment purposes where wages were "levied when [they were] neither in plaintiff's private possession nor subject to his private control").

Accordingly, this Court finds that Petitioner has failed to state claims upon which relief can be granted. Dismissal of the Amended Petition is therefore warranted pursuant to Rule 12(b)(6) and the government's motion seeking such relief is granted.

### 2. Petitioner's Motion to Dismiss and Petition for Writ Quo Warranto

In light of this Court's finding that the government's Motion to Dismiss should be granted, Petitioner's Motion to Dismiss the government's motion is denied. In addition, Petitioner's Writ Quo Warranto, which seeks an Order compelling the government to further support its opposition to Petitioner's various legal positions, is denied on the basis that the government has sufficiently set forth its opposition and demonstrated that Petitioner has failed to state claims upon which relief may be granted.

### C. Petitioner Is Not Entitled to Default Judgment

### 1. Petitioner's Motion for Default Judgment Against Precision

The Clerk of the Court entered default against Precision on April 3, 2008, after Precision failed to appear or defend this action. (Docket No. 15.) Petitioner moved for default judgment against Precision two weeks later. (Docket No. 16.) Despite the entry of default, however, Precision is statutorily immune from liability in this case because it complied with the Notice of Levy:

> Effect of honoring levy.– Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

26 U.S.C. § 6332 (e).

In other words, "compliance with the obligation to honor the levy extinguishes liability to the claimant of the property." Schiff, 780 F.2d at 212. Accordingly, Petitioner is not entitled to judgment against Precision. His motion seeking such relief is therefore denied. Moreover, because Precision enjoys the immunity protections of § 6332(e), Petitioner fails to state a claim upon which relief can be granted, thus requiring dismissal of Petitioner's claim against Precision.

### 2. Petitioner's Motions for Writ of Mandamus

In his Motions for Writ of Mandamus, Petitioner seeks Orders from this Court compelling the Clerk of the Court to grant his Motion for Default Judgment and enter judgment against Precision. In light of this Court's finding that Precision is statutorily immune from judgment, these motions are denied.

### D. Petitioner's Notice of Trespass and Motion for Sanctions Against the Government

In his "Judicial Notice of Trespass and Motion for Sanctions" and in his "Clerk's Praecipe Re: Default," Petitioner takes umbrage at the government's opposing his Motion for Default Judgment on Precision's behalf and seeks $5,000 in sanctions. (Docket No. 19, p. 2.) In response, the government suggests that sanctions may be appropriate against

Petitioner for pressing frivolous anti-tax arguments. (Docket No. 21, p. 6.)

This Court finds that the government's response to Petitioner's Motion for Default Judgment against Precision was entirely appropriate, both because the government has an interest in the efficient operation of tax collection, which includes not burdening immune employers with baseless litigation, and because the government's attorney is an officer of the court. Thus, sanctions against the government are not warranted.

Moreover, although this Court declines to impose sanctions against Petitioner at this time, Petitioner is hereby warned that he will be subject to sanctions if he further abuses the judicial process by pursuing further frivolous tax challenges. Cf. Schiff, 751 F.2d at 117 ("Both damages and costs are appropriate sanctions against those who would persistently raise arguments against the income tax which have been put to rest for years.").

## IV. CONCLUSION

For the foregoing reasons, the government's Motion to Dismiss the Amended Petition is granted, and Petitioner's motions for various forms of relief are denied.

## V. ORDERS

IT HEREBY IS ORDERED, that the Petition to Quash (Docket No. 1) is DISMISSED as moot in light of the filing of the Amended Petition.

FURTHER, that the Clerk of the Court is directed to DISMISS Respondents IRS, Paulson, Stiff, and Hurst, and substitute the United States in their place.

FURTHER, that the government's Motion to Dismiss the Amended Petition (Docket No. 9) is GRANTED.

FURTHER, that the Amended Petition (Docket No. 6) is DISMISSED.

FURTHER, that Petitioner's Motion to Dismiss the government's Motion to Dismiss (Docket No. 23) is DENIED.

FURTHER, that Petitioner's Petition for Writ Quo Warranto (Docket No. 29) is DENIED.

FURTHER, that Petitioner's Notice of Trespass and Motion for Sanctions against the government (Docket No. 27) is DENIED.

FURTHER, that Petitioner's Motion for Default Judgment against Respondent Precision Process Equipment, Inc. (Docket No. 16) is DENIED and Precision is DISMISSED as a Respondent.

FURTHER, that Petitioners Motions for Writ of Mandamus (Docket Nos. 25, 30) are DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: March 31, 2009
       Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge